UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERESA THOMSON,

       Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

18-CV-1129

DECISION AND ORDER

---

On October 15, 2018, the plaintiff, Teresa Thomson, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 13, 2019, Thomson moved for judgment on the pleadings, Docket Item 8; on August 12, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on September 24, 2019, Thomson replied, Docket Item 17.

For the reasons stated below, this Court grants Thomson's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On September 19, 2014, Thomson applied for Disability Insurance Benefits. Docket Item 7 at 100. She claimed that she had been disabled since December 26,

2013, due to lumbar neuritis, post laminectomy syndrome, disc herniations, and degenerative lumbar condition. *Id.* at 100-01.

On December 4, 2014, Thomson received notice that her application was denied because she was not disabled under the Act. *Id.* at 106-08. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 123, which was held on December 16, 2016, *id.* at 50. The ALJ then issued a decision on May 30, 2017, confirming the finding that Thomson was not disabled. *Id.* at 20-30. Thomson appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 6.

## II. THE ALJ'S DECISION

In denying Thomson's application, the ALJ analyzed Thomson's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). If there is no severe impairment or combination of impairments, the claimant is not disabled. *Id.* If there is a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether a severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments

2

meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that there is no severe impairment or combination of impairments that meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See id.* § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Thomson had not engaged in substantial gainful activity since December 26, 2013, the alleged disability onset date. Docket Item 7 at 23. At step two, the ALJ found that Thomson had the severe impairments of lumbar spondylosis and post-laminectomy syndrome. *Id.*

3

At step three, the ALJ determined that Thomson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 7 at 24. At step four, the ALJ determined that, based on the entire record, Thomson had the RFC to "perform light work" with the following exceptions:

> the claimant[ ] can lift, carry, push and pull up to forty pounds; can sit and stand constantly provided there is a sit-stand option allowing for alternating between sitting and standing at least every hour; can walk frequently; can climb stairs, kneel, bend, stoop and squat occasionally; can frequently do fingering and handling tasks; can occasionally reach overhead; can frequently reach at or below shoulder level; can occasionally drive, operate machinery, and perform work in high temperature and humidity extremes; and [can] occasionally engage in repetitive rotation.

*Id.* Based on that RFC and the testimony of a vocational expert ("VE"), the ALJ found that Thomson was "capable of performing [her] past relevant work as a psychiatric nurse." *Id.* at 29.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985

4

(quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I. ALLEGATIONS

Thomson first argues that the ALJ erred in finding that her prior work as a psychiatric nurse constituted "past relevant work." Docket Item 8-1 at 15. Alternatively, Thomson contends that the ALJ failed to resolve an "apparent conflict" between the VE's testimony that she could perform her past work as a psychiatric nurse and the description of that job in the Department of Labor's Dictionary of Occupational Titles ("DOT"). *Id.* at 18. Finally, Thomson argues that the ALJ's RFC determination "failed to distinguish between differing periods of medical severity." *Id.* at 23.

### II. ANALYSIS

#### A. Past Relevant Work

"Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that *lasted long enough for [her] to learn to do it.*" 20 C.F.R. § 404.1560(b)(1) (emphasis added). Thomson argues that her

5

approximately 14-month tenure as a psychiatric nurse was not long enough for her to learn that job. In support of this argument, she notes that "[t]he occupation of psychiatric nurse has [a specific vocational preparation ('SVP')] level of 7, meaning that it takes over 2 years and up to and including 4 years to learn." Docket Item 8-1 at 16 (citing DOT 075.364-010, 1991 WL 646751).

SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT (app'x C), 1991 WL 688702. SVP "includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs." *Id.* "Essential experience in other jobs" is defined as "serving in less responsible jobs which lead to the higher grade job or serving in other jobs which qualify." *Id.* SVP "does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job." *Id.*

Here, prior to working as a psychiatric nurse, Thomson worked as a pediatric nurse for twenty years. *See* Docket Item 7 at 54. She testified that she changed from pediatric to psychiatric nursing because she "wanted to get more of a sedentary job" as a result of her back pain. *Id.* at 55. When she began her new position as a psychiatric nurse, she received on-the-job training for approximately two months. *Id.* at 96. At the end of those two months, she "fe[lt] competent to do the job." *Id.*

The jobs of pediatric nurse and psychiatric nurse both fall under the DOT definition of "staff nurse." *See* DOT 075.364-010, 1991 WL 646751; *see also* Docket Item 7 at 94 (VE testifying that "[s]taff nurse covers all of the jobs" that Thomson had

6

performed). Thus, it was not error for the ALJ to count Thomson's twenty years of experience as a pediatric nurse as SVP for the psychiatric nurse role. *Cf. LaCrosse v. Comm'r of Soc. Sec. Admin.*, 2017 WL 4250604, at *5 (D. Ariz. Sept. 26, 2017) (finding that "there is substantial evidence that, through her many years of work in other nursing jobs, [the plaintiff] acquired sufficient vocational training such that her briefer stint as an office clinic nurse may be deemed past relevant work").

Moreover, there is no indication that Thomson's 14 months as a psychiatric nurse was insufficient "orientation time [for her] to become accustomed to the special conditions of [that] new job." *See* DOT (app'x C), 1991 WL 688702. On the contrary, she testified that at the end of two months of on-the-job training, she felt competent to perform the psychiatric nurse role. Docket Item 7 at 96.

Thus, the ALJ did not err in finding that Thomson's work as a psychiatric nurse constituted "past relevant work."

### B.     Apparent Conflict Between the VE's Testimony and the DOT

In determining whether a claimant has the RFC to perform past relevant work, the ALJ "may use the services of [a VE], or other resources, such as the [DOT] and its companion volumes and supplements." 20 C.F.R. § 404.1560. "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4P, 2000 WL 1898704, at *2. Thus, if the ALJ relies on a VE's testimony, the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between the testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting SSR 00-4P, 2000 WL 1898704, at *2).

More specifically, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4P, 2000 WL 1898704, at *4 (emphasis added); *see also Lockwood*, 914 F.3d at 94 (explaining that the ALJ must "undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one" (quoting *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018))). And "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P, 2000 WL 1898704, at *2.

Here, the ALJ found that Thomson had the RFC to perform light work with several exceptions, including that she could only "occasionally reach overhead." Docket Item 7 at 24. Thomson argues that in light of that limitation, there is an apparent conflict between the VE's testimony that Thomson could work as a psychiatric nurse and the description of that job in the DOT. Docket Item 8 at 18. This Court agrees.

The DOT states that work as a psychiatric nurse requires "reaching" on a "frequent" basis. *See* DOT 075.364-010, 1991 WL 646751. "Reaching" is defined as "extending the hands and arms *in any direction*." SSR 85-15 1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added). Based on that definition, the Second Circuit has held that "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching[ ]' . . . creates at least

8

an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." Lockwood, 914 F.3d at 92 (emphasis in original).

The VE testified that Thomson would be able to perform the work of a psychiatric nurse "[n]ot as generally performed but as [she] actually performed [it]" based on Thomson's description of her prior work. Docket Item 7 at 97. The ALJ asked the VE whether that testimony was "consistent with the DOT," and the VE responded that it was. *Id.* The VE then clarified that the availability of a "sit/stand option . . . doesn't exist in the DOT," but based on the VE's experience, such an option would be available. *Id.* But the ALJ did not ask about—and the VE did not address—the reaching requirements of the psychiatric nurse position. "[W]hile 'this Court could guess' what the [job] 'require[s] in reality, it [was] the [ALJ's] duty to elicit an explanation from [the VE] as to whether th[at] occupation[ ] actually require[s]   . . . overhead reaching.'" *Lockwood*, 914 F.3d at 93 (quoting *Spears v. Colvin*, 2016 WL 4973890, at *5 (W.D.N.Y. Sept. 19, 2016)).

The Commissioner argues that there is no apparent conflict because "[n]othing in [Thomson's] description [of her prior work as a psychiatric nurse] indicates overhead reaching." Docket Item 13-1 at 21. "Because [Thomson] could perform her past relevant work as she actually performed it," the Commissioner asserts, "any inconsistency with the generalized descriptions contained in the DOT is irrelevant." *Id.* at 22. While it is true that Thomson did not state that her past work as a psychiatric nurse required overhead reaching, the ALJ asked Thomson only to "describe . . . *generally* what [she was] doing in that job and how it was performed." Docket Item 7 at 95 (emphasis added). Thomson answered:

9

> I could sit and talk to the residents and find out how they
> were doing, the patients. I was able to sit and do paperwork,
> I could also stand and talk to them, or stand and do the
> paperwork. I was required to, you know, do rounds every
> three hours to check to make sure everybody was ok.

*Id.* But the ALJ never inquired—as was his obligation—whether Thomson's job as a psychiatric nurse involved overhead reaching, and, if so, how often. So Thomson's silence on that issue is irrelevant.

The Commissioner also argues that Thomson "never alleged any difficulty with overhead reaching[ ] or reaching in general." Docket Item 13-1 at 21-22. But that is not true: Thomson stated in a 2014 Adult Function Report that "certain reaching" caused pain. Docket Item 7 at 240. Moreover, as Thomson observes, "[e]ven if [she] never complained outright of difficulties reaching, that is irrelevant as the ALJ decision nevertheless found, based upon the evidence of record, that [Thomson] is only able to reach overhead on an 'occasional' basis due to her impairments." Docket Item 17 at 6 (footnote omitted).

Because the ALJ failed to resolve the apparent conflict between the DOT's description of the job of a psychiatric nurse and the VE's testimony that Thomson could perform that job, this matter is remanded so that the ALJ can resolve that apparent conflict.[1]

---

[1] Thomson also argues that "[t]he April 2014 [functional capacity evaluation] upon which the [ALJ's] decision relied in rendering [Thomson]'s RFC was not indicative of [her] functioning throughout the entire period under review." Docket Item 8-1 at 24. Specifically, "[t]he ALJ acknowledged that [Thomson]'s functional capacity declined at some point prior to her April 11, 2017 cervical surgery, yet he failed to (1) seek an opinion from [her treating physician] concerning the extent of this decline and its expected duration, or (2) send [her] for an updated consultative examination." *Id.* (citing Docket Item 7 at 28). The Commissioner responds that "the ALJ's decision was issued in May 2017" and "[t]herefore, even if [Thomson] sustained a cervical spine injury, she

## **CONCLUSION**

For the reasons stated above, Thomson's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 13, is DENIED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 5, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

did not satisfy the 12-month durational requirement . . . to prove disability." Docket Item 13-1 at 24. Because additional time has passed and the ALJ will need to revisit this issue on remand, there is no need for this Court to reach it here. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 248 (W.D.N.Y. 2019).